# SUPREME COURT OF TENNESSEE,

10L 107
2pi 41

FOR THE

# MIDDLE DIVISION,

NASHVILLE, . . . . . . . . DECEMBER TERM, 1882.

### J. W. HILL, Ex'r, v. A. V. McLEAN et al.

1. EVIDENCE. *Parol.* *Priority of liens.* Parol evidence is admissible to show an agreement between the contracting parties that one of two debts, both of which are secured by valid liens on the same land, shall be first paid out of the proceeds of the sale of the land.

2. WITNESS. *Vendee.* *Mortgage.* Under a bill filed by the personal representative of a vendor of land against the vendee and the personal representative of a mortgagee of the vendee, to enforce the vendor's lien for unpaid purchase money, where the conveyance by the vendor to the vendee is in fee acknowledging the receipt of the purchase money and the lien is only evidenced by the vendee's note stipulating

therefor, and the complainant claims a priority of satisfaction over the mortgagee by parol contract, the vendee is a competent witness to prove the agreement.

---

### FROM RUTHERFORD.

---

Appeal from the Chancery Court at Murfreesboro. A. S. MARKS, Ch.

PALMER & RICHARDSON for complainant.

F. R. BURRUS for defendants.

COOPER, J., delivered the opinion of the court.

The contest in this case is for priority of lien on a tract of land between two creditors of a common debtor. The chancellor dismissed the bill, and the complainant appealed.

On February 26, 1872, Julia A. Smith, the testatrix of the complainant, sold and conveyed to the defendant, A. V. McLean, the tract of land in question for the consideration of $8,685.36, the receipt of which is acknowledged on the face of the deed as paid in cash. On the same day, and at the same time, the defendant McLean conveyed the land to H. O. Blackman, the intestate of the defendant R. C. Blackman, in mortgage to secure the note of McLean of that date to H. O. Blackman, due January 6, 1873, for $5,151.68. At the same time, and as part of the transaction, H. O. Blackman assigned to Julia A. Smith a note which he held on complainant J. W. Hill, due January 6, 1873, for the same sum of $5,151.68, secured by a mortgage on a tract of land belonging to Hill. In effect, McLean paid to complainant's intestate so much of the purchase money of the land in controversy by Hill's note, substituting his own note in lieu thereof to Blackman, secured by a mortgage on the land he had thus bought. The bill alleges that at the same time and place McLean executed to Julia A. Smith a

note for the residue of the purchase money, in the words and figures following, to-wit:

"MURFREESBORO, February 26, 1872.

$1,400. On or before the first day of next January, 1873, I promise to pay Mrs. Julia A. Smith fourteen hundred dollars, balance due of purchase money for a tract of land bought by me of said Julia A. Smith, it being the same land on which I now live, with ten per cent interest *per annum* from date until paid.                 A. V. McLean."

The bill further alleges that McLean was residing on the land bought by him at the date of the deed, and never bought any other land from her. H. O. Blackman died intestate on September 15, 1872, and the defendant R. C. Blackman was appointed and qualified as the administrator of his estate. On July 4, 1873, Julia A. Smith died, having made a will of which the complainant was appointed executor, and qualified accordingly. This bill was filed September 6, 1875, to have a lien declared and enforced on the land sold to McLean for the payment of the note of $1,400. The defendant R. C. Blackman, as administrator, had already filed his bill against McLean to foreclose the mortgage of his intestate, and had obtained a decree for the sale of the land to satisfy the debt secured. The present complainant claimed the right to priority of satisfaction out of the land before the mortgage debt, upon the ground that his intestate, Julia A. Smith, had refused to sign the deed conveying the land to McLean, unless H. O. Blackman would agree that the note of $1,400 for the balance of pur-

chase money should first be paid out of the proceeds of the sale of the land, and that Blackman had agreed that this should be done.

The bill was taken for confessed against the defendant A. V. McLean. The defendant Blackman answered, admitting all the facts alleged in the bill, except those relating to the consideration of the sale to McLean, and the note of $1,400. He does not admit the execution of the latter note as claimed, and avers, upon information, that the consideration was all paid by the assignment of the note and mortgage of Hill, and by the conveyance by McLean to Julia A. Smith of another tract of land by way of exchange. The bill waives an answer under oath, and the answer only operates to make an issue between the parties. There is no proof of any conveyance of land by McLean to Smith in part satisfaction of the purchase money due from him. On the contrary, the only evidence on the subject distinctly negatives the averment. The contest, therefore, upon the facts, is narrowed down to the point whether the note for $1,400 was executed for a balance of the purchase money, at the time, and under the circumstances claimed in the bill.

The proof shows that the deed from Smith to McLean, and the mortgage from McLean to Blackman, were executed at the same time at the office of a lawyer in the town of Murfreesboro, on the 26th of February, 1872. There can be no doubt that there were present on that occasion the lawyer himself, who died in October, 1875, and who seems to have been

the attorney of Blackman, A. V. McLean, Julia A. Smith, H. O. Blackman, J. W. Hill and James A. Leiper, the latter being a lawyer also occupying the same office, but not employed by any of the parties. Of these, the only persons living when the cause was at issue were McLean, Leiper and Hill, all of whom were examined as witnesses by complainant.

Before stating the substance of the testimony of these living parties, it should be observed that Julia A. Smith and A. V. McLean were brother and sister, and they and complainant Hill's wife were the nephew and nieces of H. O. Blackman, and, as such, took one share, in right of their mother, in his estate. The defendant, R. C. Blackman, was a brother of H. O. Blackman, and also took one share of his estate as an heir and distributee. H. O. Blackman died possessed of a considerable estate. By her will Julia A. Smith devised and bequeathed her property, which consisted principally in the purchase money of the land sold to McLean, to the wife and children of complainant Hill. McLean took nothing under the will.

McLean testifies that the consideration for the land was, as recited in the deed, $8,685.30, of which $2,133.62 were paid in improvements which he had put upon the land, and $5,151.68 in the Hill note. This left a balance of $1,400, for which he executed and delivered to Julia A. Smith his note filed with the bill. The witness says that the note was written by complainant Hill on the day it bears date, in the presence of the parties and at the place hereinbefore mentioned, under the direction of Blackman's lawyer, who told him how

to write it. He further proves, upon interrogatories addressed to him for the purpose of bringing out the testimony, that the facts upon which the equity of the complainant's claim to 'priority of satisfaction out of the land is rested occurred as stated in the bill. He testifies that Julia A. Smith refused to sign the deed of conveyance to him so as to enable him to execute the mortgage to Blackman, unless Blackman would agree that the balance of the purchase money due to her, which was evidenced by the $1,400 note, should be first paid out of the land, and that Blackman agreed to those terms, and the papers were then executed. He adds that no part of the note had been paid by him.

Hill testifies that he wrote the $1,400 note at the time and place mentioned; that he found the note among the papers of his testatrix after he had filed his inventory of assets as executor, and that no part of it had been paid to him. Another witness proves that he wrote the will of Julia A. Smith; that she spoke to him of the note due to her from her brother, A. V. McLean, for said land sold by her to him, and that he, the witness, wrote the will in such way as to cover it in the disposition made of her property. Leiper proves that he was present on the occasion referred to, and perhaps wrote one of the instruments, probably the deed from Mrs. Smith to McLean. He drew it under the instructions of Blackman and his lawyer. The witness cannot recollect whether McLean was or was not present on the occasion, and cannot say that there was or that there was not a balance

of purchase money due from McLean to Smith, or any note executed therefor. He cannot recall, he says, any of the particulars of the transactions in this regard, nor say whether any checks for money passed between the parties, but thinks no money was paid. The defendant Blackman proves, what Hill in his deposition admits, that Hill never mentioned to him the claim now set up until he filed his bill.

Upon the evidence, of which the foregoing is a brief abstract, it is clear that the facts alleged in the bill in support of the complainant's demand and its claim to priority of satisfaction are established. The positive swearing of three witnesses to the existence of the debt in the lifetime of the testatrix, and of two of these witnessess to the execution of the note at the time and place specified, must prevail over the absence of recollection, and negative testimony of Leiper and Blackman. The note itself shows that it was given for the unpaid purchase money for the land, and that a lien was reserved on the land for its payment by a description which identifies the tract: *Osborne* v. *Royer,* 1 Lea, 217; *Mynatt* v. *Magill,* 3 Lea, 71; *Nailer* v. *Young,* 7 Lea, 735; *Eskridge* v. *McClure,* 2 Yer., 84. The recital of the payment of the purchase money in the vendor's deed of conveyance to the vendee will not affect the vendor's equity, nor, *a fortiori,* a lien created by an independent instrument: 2 Sto. Eq. Jur., sec. 1225; *Bentley* v. *Jordan,* 3 Lea, 361; *Baxter* v. *Washburne,* 8 Lea, 16. A second mortgagee whose mortgage is registered will be postponed to a prior mortgagee of whose mortgage, although unregistered, he

8—VOL. 10.

has notice: *Kirkpatrick* v. *Ward,* 5 Lea, 434. Parol evidence is admissible to show an agreement between the contracting parties that one of two or more lien debts shall be first paid out of the proceeds of the property: *Brothers* v. *Taylor,* 4 Lea, 445; *Hicks* v. *Smith,* 4 Lea, 459. And a promise by a mortgagee or purchaser to pay a debt to a third person first out of the proceeds of the sale of the land, may be proved by parol, for the consideration of a conveyance is no part of the writing required by the statute of frauds, and may be shown *aliunde: Rodes* v. *Crockett,* 2 Yer., 346; *Moore* v. *Stovall,* 2 Lea, 543; *Mowry* v. *Davenport,* 6 Lea, 81; *White* v. *Blakemore,* 8 Lea, 61. The complainant is, therefore, entitled to the relief sought upon the evidence in the record.

It is insisted, however, in behalf of the defendant Blackman, that Hill and McLean were incompetent to testify to the material facts relied on under the provisions of the statute regulating the competency of witnesses. The first section of the act provides that no person shall be incompetent to testify because he or she is a party to or interested in the issue tried. The second section is: "In actions or proceedings by or against executors, administrators or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statements by the testator, intestate or ward, unless called to testify thereto by the opposite party": Act of 1870, 78, 2; Rev. Code, sec. 3813 *d.*

This court has held, in view of the general pro-

vision of the first section, that the limitations of the second section must be confined to the cases therein specified. The courts have no power to enlarge or restrict the excepted cases: *Hughlett* v. *Conner*, 12 Heis., 83; *Fuqua* v. *Dinwiddie*, 6 Lea, 645; *Rielly* v. *English*, 9 Lea, 16. But the court has also held that to bring a witness within the restriction of the statute in a chancery case, it is not necessary that he should be the opposite party on the record to the personal representative against whom he is called to testify. Although on the same side of the record, if the interest of the witness be antagonistic to that of the personal representative against whom he is called, he will be incompetent under the statute: *Trabue* v. *Turner*, 10 Heis., 447; *Aymett* v. *Butler*, 8 Lea, 453. On the other hand, if he is not an opposite party to the party against whom he is called to testify in the sense of having relief against him, and if he have no interest antagonistic to him, no reason occurs why he should be disqualified. He is, in that view, not within the restrictions of the statute either in letter or spirit, and would, under the general provisions of the first section, be a competent witness. For the statute was never intended to deprive litigants of the testimony of nominal but disinterested parties, nor, *a fortiori*, of parties whose interests were the same as those against whom they were called to testify. And a person incompetent to testify as to any transaction with, or statement by the testator, intestate or ward, is nevertheless competent to prove any other facts not within the specific restrictions of the section: *Jones* v. *Waddell*, 12 Heis., 338; *Key* v. *Holloway*, 7 Baxt., 579.

The complainant concedes that he is incompetent to testify against the defendant Blackman as executor, as to any transaction with, or statement by his intestate. The complainant was, therefore, only called to testify to the writing by him of the note in controversy at the time and place specified, that he found it among the papers of his testatrix, and that no part of it had ever been paid to him. As to these facts, he was clearly a competent witness, for they did not relate to any transaction with, or statement by the defendant's intestate.

The testimony of McLean is of a different character in several material respects. He does testify as to a transaction with, and statements by the defendant's intestate, against whom he is called to testify. He is a party to the suit on the same side with defendant. He is not interested in the recovery of the complainant, nor is he seeking or entitled to any relief on his own behalf against the defendant Blackman, or his intestate. His interest would be with the defendant to resist the complainant's demand. For if the note sued on were declared to be fictitious, he would thereby avoid pecuniary liability to the amount called for on its face. And if the priority of satisfaction claimed by the complainant were disallowed, the security for the payment of the defendant's debt would be increased, the witness being now insolvent, and yet an heir and distributee of the estate of the defendant's intestate. His interest is altogether on the side of the party against whom he is called to testify, and he is not, in any proper sense, one of the parties "neither" of

whom is allowed to testify against the other within the restrictions of the second section of the statute. He was a competent witness, and his testimony must be admitted.

The chancellor's decree will be reversed, and a decree rendered in favor of the complainant against the defendant McLean for the debt and the enforcement of the lien on the land for its payment; and the complainant will be allowed priority of satisfaction over the mortgage debt of the defendant Blackman out of the proceeds of the sale of the land, to the extent of the debt, interest and costs.